**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAWN M. SCHNELL,  :  <br>    Plaintiff  : <br>                                                  : <br>            v.                            : <br>                                                  : <br> THE BANK OF NEW YORK MELLON, et : <br> al.,                                       : <br>    Defendants | CIVIL ACTION <br><br> NO. 11-601 |

November 21, 2011                                                                       Anita B. Brody, J.

## MEMORANDUM

**I. Introduction**

Plaintiff Dawn M. Schnell ("Schnell") is a citizen of Pennsylvania who has filed a complaint against Defendants Bank of New York Mellon ("BNY"), a citizen of Texas, and Bank of America ("BOA"), a citizen of North Carolina (collectively "Defendant Banks").[1] Schnell accuses the banks of first deceiving her and then pressuring her into accepting a mortgage she and her late husband could not afford.[2]

---

[1] The Complaint's caption lists the parties accordingly: Plaintiff Dawn M. Schnell, a/k/a Dawn M. Batson; Defendant The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders, CWABS, Inc., Asset-Backed Certificates 2007-5; Defendant Bank of America, N.A., f/k/a Countrywide Home Loans, Inc. and/or Countrywide Financial Services Corporation. Defendants note in their Motion to Dismiss that "[t]he Complaint incorrectly identifies BOA as 'f/k/a Countrywide Home Loans, Inc. and/or Countrywide Financial Services Corporation.' Countrywide Home Loans, Inc. and Countrywide Financial Services Corporation are each independent subsidiaries of Bank of America Corporation."

[2] All references are to BOA instead of Countrywide, since the former purchased the latter and Schnell has brought charges against BOA, not Countrywide.

Jurisdiction is based on diversity under 28 U.S.C. § 1332.  Both sides agree that Pennsylvania law is applicable.  For the reasons outlined below, I will grant Bank Defendants' Motion to Dismiss.

## II. Background

On February 23, 2007, Schnell and her late husband Thomas closed on a mortgage refinance loan on their property at 47 Rorer Avenue, Hatboro, PA 19040 for a principal amount of $233,000.  According to Schnell, BOA agents initially offered her a loan with a fixed 7.75% interest rate for thirty years and then, prior to closing, switched the rate to an adjustable rate of 9.75% for the first two years.  The adjustable-rate mortgage ("ARM") was subject to a pre-payment penalty and had an interest rate ceiling of 16.75%.

Schnell alleges that BOA agents completed "at least two" loan applications on her behalf.  She provided all of the necessary information, including tax returns and completed IRS forms, and those documents indicated that her household's monthly income was approximately $4,842.00.  Yet on the initial loan application, BOA agents increased her household's monthly income to $6,200.00.  BOA agents purportedly manipulated her income in order to secure her a loan that she ultimately could not afford.  Defendant Banks admit that Schnell signed an earlier loan application on February 19, 2007 that listed her monthly income at the higher rate.  Mot. Dismiss Ex. G.  But on February 23, 2007, she signed the application that actually provided her with the loan.  This application clearly lists her monthly household income as $4,842.93.  Mot. Dismiss Ex. F.  On February 23, 2007, Schnell also signed the "Adjustable Rate Note" addendum that permitted the interest rate to fluctuate and set a two-year prepayment penalty.  Mot. Dismiss Ex. E.

Schnell made timely payments for several years.  Beginning in April 2009, however, she stopped making her monthly principal and interest payments and eventually defaulted.  BNY, as the assignee of the loan, filed for foreclosure in the Court of Common Pleas of Montgomery County, Pennsylvania.  Schnell responded with a flurry of filings, and the court eventually issued a scheduling order preventing her from filing any additional pleadings without first obtaining the court's permission.  Schnell then filed this federal action.  Montgomery County Court of Common Pleas Judge Bernard Moore stayed the foreclosure action pending the resolution of this matter.

**III. Legal Standard**

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the complaint . . . may be entitled to relief." Kerchner v. Obama, 612 F.3d 204, 207 (3d Cir. 2010) (internal quotation marks omitted).  The complaint must allege facts sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 884 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."

Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). This "assumption of truth" is "inapplicable to legal conclusions." Iqbal, 556 U.S. at 885.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted).  Thus, "a court may . . . consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV. Discussion**

Schnell brings eight counts against Defendant Banks.  She brings two counts against BNY (Conspiracy & Unfair Trade Practices and Consumer Protection Law (UTPCPL)) and six counts against BOA (Conspiracy; Fraud; Negligent Misrepresentation; UTPCPL; Promissory Estoppel; & Credit Repair Organizations Act (CROA)).

**a. Counts I & IV: Conspiracy (BNY) & Conspiracy (BOA)[3]**

In Counts I and IV of her Complaint, Schnell accuses BNY and BOA of conspiracy. Schnell accuses the former of civil conspiracy and the latter of criminal conspiracy.

According to the Pennsylvania Supreme Court: "To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979) (citations omitted). The Court added: "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy," and "[t]his unlawful intent must be absent justification." Id.

Schnell does not provide any facts showing an unlawful agreement between the two parties in her Complaint. She simply states that there was an agreement between Defendant Banks "to inflict a wrong or injury" against her. Compl. ¶ 81. The only agreement she references is the Pooling and Servicing Agreement ("PSA"), which she admits was filed with the S.E.C. Compl. ¶19. The PSA describes the mortgage-backed securitization agreement between the banks and outside investors and does not reveal an intent to injure Schnell, let alone an intent absent a legitimate business interest. Thompson Coal Co., 412 A.2d at 472. A complaint that "merely alleges in the most general terms that [defendants] conspired to intentionally harm [plaintiff]"

---

[3] Prior to listing the eight counts against Defendant Banks, Schnell alleges that they are guilty of "Conspiracy to Commit Predatory Lending." The Third Circuit has held: "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000) (citing Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)). Pennsylvania, however, does not recognize predatory lending as an independent cause of action. In re McConnell, 390 B.R. 170, 182 (Bankr. W.D. Pa. 2008). "Any claim for relief for predatory lending practices must be supported by some statutory basis . . . ." Id.

cannot survive a motion to dismiss.  Grose v. Procter & Gamble Paper Prods., 866 A.2d 437, 440-41 (Pa. Super. Ct. 2005).

Unlike the civil conspiracy charge levied against BNY, Count IV against BOA is a criminal conspiracy charge under 18 Pa. Cons. Stat. § 903.  The statute provides the following definition of a criminal conspiracy:

> (a) A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa. Cons. Stat. § 903.  Schnell, however, cannot bring a criminal conspiracy charge against BOA.  That task is left to the government, and Pennsylvania courts have held: "The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent." Com. v. McCall, 911 A.2d 992, 996 (Pa. Super. Ct. 2006).  Thus even if Schnell could assume the government's prosecutorial role in this matter, she has not provided any evidence of a "particular criminal objective" or "shared criminal intent," on the part of BOA in conjunction with BNY. Id.

Therefore, I will dismiss Counts I and IV.

**b. Count III: Fraud (BOA)**

In her complaint, Schnell accuses Defendant BOA of fraud.  Under Pennsylvania law, fraud, also referred to as intentional misrepresentation, contains the following elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) (citations omitted). Although she does not specify, Schnell alleges fraud in the inducement, not fraud in the execution of the contract. The former refers to false representations made by one party to induce the other party to agree to a contract whereas the latter generally refers to the fraudulent omission of a term from a contract. Toy v. Metro. Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007). According to Schnell, Defendant BOA honored all of the terms in the written contract but induced her to sign the loan agreement by making fraudulent statements prior to closing. In addition to offering her a lower rate, BOA agents allegedly told her that "she should take this loan because they would refinance her in two years and that her home value should increase." Compl. ¶ 53. Yet the written Uniform Residential Loan Application, which provided the loan and was signed by Schnell, clearly states that the interest rate is 9.75% and that the loan has an ARM with a "2 Yr Hybrid LIBOR."[4] Schnell also admits that she knew the loan's interest rate began at 9.75% when she signed it. Compl. ¶ 50. Therefore, she was not relying on the 7.75% rate when she closed on the loan.

The parol evidence rule, moreover, bars the introduction of any alleged oral statements made at or prior to closing that contradict the written contract. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 498 n.26 (Pa. 2004). According to the Pennsylvania Supreme Court, when the parties "have deliberately put their engagements in writing, the law declares the writing to be

---

[4] A two-year hybrid loan means that the first two years are at a fixed interest rate and that the interest rate will vary ("adjust") after that. "LIBOR" refers to the London Inter-Bank Offered Rate and dictates the rate at which the loan will adjust. Don Taylor, Understanding a LIBOR Arm, Bankrate.com (Oct. 23, 2006), http://www.bankrate.com/brm/news/DrDon/Oct06_LIBOR_ARM_hybrid_a1.asp.

not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract." Id. at 497 (citations omitted). "Notably, while parol evidence may be introduced based on a party's claim that there was fraud in the execution of the contract . . . parol evidence may not be admitted based on a claim that there was fraud in the inducement . . . ." Id. at 498 n.26 (citations omitted). Additionally, none of the contract's terms are ambiguous, so the exception for referring to parol evidence for clarity is inapplicable. Id. at 498 ("In addition, where a term in the parties' contract is ambiguous, 'parol evidence is admissible to explain or clarify or resolve the ambiguity . . . .'") (citations omitted). Because Schnell has not alleged fraud in the execution of the contract, "the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence." Id.

Even if Schnell could introduce these earlier statements, the Pennsylvania Supreme Court has held that "[m]ere promises to do something made at the time of executing a contract, and not statements of existing facts which are untrue, do not in themselves constitute fraud." Nissenbaum v. Farley, 110 A.2d 230, 264 (Pa. 1955) (citations omitted). The "documents that [she] signed plainly stated the terms of the transaction and more than corrected any misleading oral statements." Johnson v. Washington, 559 F.3d 238, 245 (4th Cir. 2009) (Wilkinson, J.) (citations omitted).

### c. Count VII: Negligent Misrepresentation (BOA)

In addition to accusing BOA of intentional misrepresentation (fraud), Schnell also alleges that BOA is guilty of negligent misrepresentation. The Pennsylvania Supreme Court holds that a claim of negligent misrepresentation requires proof of the following four elements:

> (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994) (citations omitted). "Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another." Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999) (citations omitted).

Schnell, however, does not provide any legal support for the existence of a duty between BOA and herself. She simply alleges without providing any case law or statutory support that the "Defendant owed a duty to the Plaintiff to not negligently misrepresent any material facts." Compl. ¶ 134. Under Pennsylvania law, a lender acts in his financial interest and does not owe a fiduciary duty to the borrower. Fed. Land Bank v. Fetner, 410 A.2d 344 (Pa. Super Ct. 1979); see also Blue Line Coal Co. Inc. v. Equibank, 683 F. Supp. 493, 496 (E.D. Pa. 1988). Furthermore, there is no evidence of the special circumstances necessary to create a duty, such as the lender assuming significant control over the borrower's business or financial affairs. Acad. Indus. v. PNC Bank, N.A., No. 2383, 2002 Phila. Ct. Com. Pl. LEXIS 94, at *42 (Phila. Ct. Com. Pl. 2002); see also Stainton v. Tarantino, 637 F. Supp. 1051, 1066 (E.D. Pa. 1986). As a result of the absence of a duty between the two parties, I do not need to address the individual elements of the claim and will dismiss Count VII.

### d. Counts II & V: UTPCPL (BNY) & UTPCPL (BOA)

Schnell alleges that BNY and BOA violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law by engaging in "unfair methods of competition and unfair or deceptive

acts or practices in the conduct of trade or commerce as set forth in 73 Pa. Const. Stat. § 201-3." Compl. ¶¶ 90, 117. Schnell does not identify the specific section of the Act that the Defendant Banks allegedly violated, as § 201-3 covers sub clauses (i) through (xxi) of the Act's prior section. But Schnell is likely referring to sub clause (xxi), which is the UTPCPL's catch-all provision and bars "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Const. Stat. § 201-2(4)(xxi).

A plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 219 (3d Cir. 2008).[5] Schnell explicitly references the Defendant Banks' "deceptive acts" and therefore does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b). Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 469-70 (E.D. Pa. 2009) (citations omitted).

Yet even under the less stringent standard, "a plaintiff must allege facts showing a 'deceptive act,' that is 'conduct that is likely to deceive a consumer acting reasonably under similar circumstances.'" Id. at 470 (citations omitted). BNY had no role vis-à-vis the origination of the

---

[5] Pennsylvania's lower courts have split over whether or not the "deceptive conduct" prong has the same requirements or offers plaintiffs a lower standard. Seldon, 647 F. Supp. 2d at 468 (comparing Commonwealth v. Percudani, 825 A.2d 743, 746 (Pa. Commw. Ct. 2003) with Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. Ct. 2000)). Although the Pennsylvania Supreme Court has not yet spoken on the issue, courts in this district have held that the 1996 amendment to the catch-all provision of the UTPCPL added a prohibition on deceptive conduct that permits plaintiffs to proceed without satisfying all of the elements of common-law fraud. See, e.g., Fingles v. Continental Cas. Co., No. 08-5943, 2010 WL 1718289, at *7 (E.D. Pa. Apr. 28, 2010); Seldon, 647 F. Supp. 2d at 468-71; Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002). I adopt their reasoning.

loan, and Schnell fails to demonstrate how BNY could have deceived her into accepting the refinancing when it did not become the assignee until after the closing.[6]

BOA, on the other hand, played a role in the origination of the disputed refinancing loan (via its acquisition of Countrywide). But to bring a private cause of action under the UTPCPL, Schnell must show that she "justifiably relied on the defendant's wrongful conduct." Yocca, 854 A.2d at 438 (citations omitted). Schnell's claim, however, is based on representations allegedly made by BOA and its agents *prior* to the signing of the refinancing contract. As a result of Pennsylvania's parol evidence rule, Schnell cannot be said to have justifiably relied on any pre-contractual representations. Id. at 502 (holding that Pittsburgh Steelers fans who signed Stadium Builder License contracts could not bring UTPCPL claims based on pre-license representations, such as an advertising brochure). Although the mortgage refinancing loan did not contain an integration clause, Schnell admits in her Complaint that she was aware of the higher interest rate and still signed the contract. Compl. ¶¶ 51-52.

Therefore, I will dismiss Counts II and V of the Complaint.

**e. Count VI: Promissory Estoppel (BOA)**

Schnell also brings a promissory estoppel claim against BOA. The Pennsylvania Supreme Court has held that in order to bring an action in promissory estoppel, the claimant must demonstrate that the promisor "(1) made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or

---

[6] There is some discrepancy as to how much time passed after the closing before BNY took assignment of the loan. BNY alleges it took assignment on October 14, 2009, whereas Schnell alleges the bank took assignment of the loan on March 26, 2007. Mot. Dismiss 30 n.14. Either way, BNY took assignment of the loan *after* the closing, and the alleged deceptive acts took place prior to closing when BOA agents allegedly offered one set of terms but then presented a second set for signature.

refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000) (citations omitted).

The Pennsylvania Supreme Court has interpreted the second prong as requiring justifiable reliance.  See Thatcher's Drug Store v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1994).  Schnell, however, cannot claim justifiable reliance when she soon thereafter signed a written contract that explicitly contradicted the alleged oral promise.  The Seventh Circuit addressed a similar scenario in which "the alleged oral agreement or promise was followed by a written contract, the terms of which [were] in direct conflict with the alleged oral agreement or promise." Mack v. Earle M. Jorgensen Co., 467 F.2d 1177, 1179 (7th Cir. 1972).  I agree with the Appellate Court's refusal to apply the promissory estoppel doctrine due to the promisee's inability to "successfully argue that [such] reliance on the promise was justifiable."[7]  Id.  Schnell cannot justifiably have relied upon a promise of a 7.75% mortgage interest rate and then signed a contract with a 9.75% interest rate that she admitted knowing was the loan's interest rate.  In the absence of justifiable reliance, this Count cannot survive Defendant Banks' Motion to Dismiss.

**f. Count VIII: Violation of Credit Repair Organizations Act ("CROA") (BOA)**

In the final count of her Complaint, Schnell alleges that BOA is bound by the CROA and that the Bank violated the Act by overstating her income on her loan application.  Compl. ¶¶ 135-38.  The CROA defines a credit repair organization as . . .

---

[7] See also David G. Epstein, Melinda Arbuckle & Kelly Flanagan, Contract Law's Two "P.E.'s": Promissory Estoppel and the Parol Evidence Rule, 62 Baylor L. Rev. 397, 430-31 (2010) ("If . . . the facts are that there was no reliance on the promise prior to the integrated agreement other than entering into the integrated agreement, then a promissory estoppel claim is likely to be dismissed . . . .").

>    (A) any person who uses any instrumentality of interstate commerce or the mails
>    to sell, provide, or perform (or represent that such person can or will sell, provide,
>    or perform) any service, in return for the payment of money or other valuable
>    consideration, for the express or implied purpose of--
>       (i) improving any consumer's credit record, credit history, or credit rating; or
>       (ii) providing advice or assistance to any consumer with regard to any
>        activity or service described in clause (i). . . .

15 U.S.C. § 1679(a)(3)(A). The statute, however, explicitly excludes "any depository institution," which is defined as "any bank or savings association." 15 U.S.C. §1679(a)(3)(B)(iii) (citing 12 U.S.C. § 1813(c)(1)). Bank of America, therefore, does not qualify as a credit repair organization, and Schnell provides no facts or case law to indicate otherwise. Thus Schnell has failed to state a CROA claim, and Count VIII is dismissed.[8]

## V. Conclusion[9]

For the foregoing reasons, I will grant Defendants' Motion to Dismiss the Plaintiff's Complaint.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

---

[8] In addition to the eight counts, Schnell alleges that the Pennsylvania Code required Bank Defendants to provide her with a loan that offered a "Net Tangible Benefit." Compl. ¶ 59. In order to support her allegation, she cites "10 Pa. Code. § 46.1 et seq." Although that Section of the Pennsylvania Code is titled "Proper Conduct of Lending and Brokering in the Mortgage Loan Business," it never uses the phrase "Net Tangible Benefit." The Chapter is broken down into three Subsections and § 46.1 simply defines related banking terms. Subsection 46.2 provides a laundry list of consumer protections in the form of prohibitions against unscrupulous lending practices but nothing that could be construed as a requirement on lenders to offer a "net tangible benefit."

[9] Raised for the first time in her Supplemental Memorandum of Law, Schnell also argues that her mortgage loan constituted a "contract of adhesion." Given her failure to raise this argument in her Complaint, I do not need to address the issue. And even if I were to address the matter, the loan would not meet the procedural and substantive unconscionability prongs of a contract of adhesion.

Copies **VIA ECF** on _____ to:					Copies **MAILED** on _____ to: